UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>v.<br><br>KHADIJAH X. CHAPMAN,<br><br>  Defendant. | Case No. 1:22-cr-00154-AKB-1<br><br>**MEMORANDUM DECISION AND ORDER RE DEFENDANT'S MOTION FOR RELEASE PENDING APPEAL** |

Pending before the Court is Defendant Khadijah X. Chapman's Motion for Release Pending Appeal (Dkt. 119). The Court finds oral argument would not aid its decision-making process and decides the motion on the parties' briefing. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B); *see* Dist. Idaho Loc. Crim. R. 1.1(f). The Court denies Chapman's motion.

## I. BACKGROUND

In July 2022, Chapman was indicted for one count of bank fraud in violation of 18 U.S.C. § 1344. (Dkt. 1). The trial was originally set for October 2022. (Dkt. 12). Chapman, however, moved to continue the trial in September 2022. (Dkt. 24). Then, in October 2022, Chapman's attorney, Christopher Calbo, withdrew, and Greg Silvey was appointed to represent Chapman. (Dkts. 26, 27, 28). In November 2022 and April 2023, Chapman again moved to continue the trial. (Dkts. 29, 31). Eventually, the trial was scheduled to proceed on August 28, 2023, and the Court conducted a pretrial conference in anticipation of the trial proceeding. (Dkts. 32, 34, 43). Shortly before the trial, however, the parties notified the Court of a discovery issue necessitating another continuance, and Chapman again moved to continue the trial. (Dkts. 44, 45). The Court finally reset Chapman's trial for November 13, 2023. (Dkt. 46).

**MEMORANDUM DECISION AND ORDER RE DEFENDANT'S MOTION FOR RELEASE PENDING APPEAL - 1**

On October 31, 2023, the Court conducted another pretrial conference and issued an amended pretrial order. (Dkts. 49, 54). Thereafter, between November 1 and November 6, the parties filed a variety of documents in anticipation of the trial. (*See* Dkts. 55, 56, 57, 58, 59, 60, 61, 63, 64, 65, 66, 67, 68, 69). During this time, the parties and the Court were also reviewing case-specific juror questionnaires, and the parties jointly identified certain prospective jurors to excuse for cause before jury selection. (*See* Dkt. 70).

Late in the day on November 9,[1] Silvey filed a motion to withdraw from representing Chapman. (Dkt. 71). The Court set a pretrial hearing on the motion for the morning of trial, November 13. (Dkt. 73). During the hearing, the Court heard argument from the Government's counsel before conducting an ex parte inquiry of Silvey and Chapman. (*See* Dkts. 116 at pp. 8-11; Dkt. 117 at pp. 2-23). From the bench, the Court denied the motion to withdraw. (Dkt. 117 at p. 27). Among other things, the Court considered the timeliness of the motion, which was filed on the eve of trial; found a change in counsel would result in undue inconvenience and delay in resolving Chapman's case; and determined the conflict between Silvey and Chapman was not so great as to prevent an adequate defense. (*Id.* at pp. 23-27).

Chapman proceeded to a four-day trial beginning on the afternoon of November 13. (Dkts. 77, 79, 81, 84). On November 16, the jury returned a guilty verdict. (Dkt. 85). On February 6, 2024, the Court sentenced Chapman to a term of imprisonment of forty-six months to be followed by five years of supervised release. (Dkt. 112 at pp. 2-3). The Court ordered Chapman

---

[1] Friday, November 10, 2023, was a federal holiday. Consequently, the motion to withdraw was filed mere business hours before Chapman's trial was scheduled to begin Monday, November 13. (*See* Dkt. 116 at p. 5).

**MEMORANDUM DECISION AND ORDER RE DEFENDANT'S MOTION FOR RELEASE PENDING APPEAL - 2**

to self-surrender to the institution the Bureau of Prisons designated. (*Id.* at p. 2). Chapman filed a notice of appeal and now seeks continued release from custody pending appeal. (Dkts. 109, 119).

## II. LEGAL STANDARD

A person convicted of a federal crime and sentenced to prison must be ordered detained pending appeal unless the Court finds "by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released" and that "the appeal is not for the purpose of delay and raises a substantial question of law or fact" likely to result in reversal, an order for a new trial, a noncustodial sentence, or "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." 18 U.S.C. § 3143(b)(1); *see United States v. Handy*, 761 F.2d 1279, 1281 (9th Cir. 1985). "[T]he word 'substantial' defines the level of merit required in the question raised on appeal." *Id.* A substantial question exists where the appeal raises a fairly debatable question. *Id.* at 1283.

## III. ANALYSIS

The Government acknowledges that Chapman is not a flight risk and that her appeal is not brought for purposes of delay. (Dkt. 124 at p. 3). Based on the nonviolent nature of Chapman's crime and her conduct while on supervised release to date, the Court finds Chapman is not a flight risk or a danger to the community. The Court likewise finds her appeal is not asserted for the purpose of delay. Rather, at issue is whether Chapman's appeal raises a substantial question of law or fact likely to result in reversal. Chapman argues that the Court's denial of the motion to withdraw presents a substantial question of law or fact and that the resolution of this question is likely to result in a new trial if successful. (Dkt. 119-1 at p. 9). In response, the Government argues

Chapman fails to present a fairly debatable question likely to result in reversal because the Court did not abuse its discretion in denying the motion to withdraw. (Dkt. 124 at p. 4).

Whether denial of the motion was an abuse of discretion requires consideration of three factors: "(1) the adequacy of the district court's inquiry; (2) the extent of the conflict between the defendant and counsel; and (3) the timeliness of defendant's motion." *United States v. Reyes-Bosque*, 596 F.3d 1017, 1033 (9th Cir. 2010). Regarding timeliness, the Ninth Circuit has "consistently held that a district court has broad discretion to deny a motion for substitution made on the eve of trial if the substitution would require a continuance." *United States v. Garcia*, 924 F.2d 925, 926 (9th Cir. 1991). Chapman argues each of these three factors supports her position.

### A.     Sufficiency of Inquiry

First, although Chapman concedes the Court conducted an inquiry, she summarily argues the inquiry was inadequate. (Dkt. 119-1 at p. 10). Chapman does not present any specific argument as to why the Court's inquiry was inadequate. (*See id.* at p. 10). The record demonstrates the adequacy of the Court's inquiry. The Court held a hearing on the motion to withdraw, and during that hearing, it inquired of both Silvey and Chapman directly about the claimed breakdown, asking specific questions of each of them. (*See* Dkt. 117 at pp. 2-23). For example, among other questions, the Court asked Chapman to explain why she wanted new counsel, what motions she believed Silvey failed to file, whether she reviewed stipulations in the case, how often she and Silvey communicated, and whether their communications were antagonistic. (*Id.* at pp. 2, 9-10, 12). The Court also inquired of Silvey and asked, for example, why he thought the attorney-client relationship had broken down. (*Id.* at p. 21).

The extent of the Court's inquiry is in line with cases where the Ninth Circuit has previously held the adequacy-of-inquiry factor was satisfied. *United States v. Velazquez*, 855 F.3d

**MEMORANDUM DECISION AND ORDER RE DEFENDANT'S MOTION FOR RELEASE PENDING APPEAL - 4**

1021, 1035 (9th Cir. 2017) ("In cases in which we have held that the adequacy-of-inquiry factor was satisfied, the district court typically held at least one hearing during which it asked specific questions."); *see United States v. Corona-Garcia*, 210 F.3d 973, 977 (9th Cir. 2000). In this case, the adequacy of the Court's inquiry does not raise a substantial question of fact or law, particularly absent argument from Chapman identifying a specific deficiency.

B.   **Extent of Conflict**

Next, Chapman argues the extent of the conflict between Silvey and her raises a substantial question of fact or law as to whether the Court abused its discretion in denying the motion to withdraw. (Dkt. 119-1 at p. 10). Chapman contends that she completely lost trust in Silvey and that the Court's denial of the motion constructively denied her counsel. (*Id.* at p. 10). A conflict warranting substitution of counsel exists where "a serious breach of trust and a significant breakdown in communication" substantially interferes with the attorney-client relationship. *United States v. Adelzo-Gonzalez*, 268 F.3d 772, 779 (9th Cir. 2001); *accord Velazquez*, 855 F.3d at 1035. The breach of trust, however, must be for a legitimate reason. *Daniels v. Woodford*, 428 F.3d 1181, 1198 (9th Cir. 2005). A defendant may not engage in obstreperous conduct or unreasonable contumacy and then rely on self-created conflict to obtain new counsel. *United States v. Love*, No. 19-10156, 2022 WL 17844678, at *1 (9th Cir. Dec. 22, 2022), *cert. denied*, 143 S. Ct. 2622 (2023); *Daniels*, 428 F.3d at 1198; *United States v. Roston*, 986 F.2d 1287, 1292 (9th Cir. 1993).

As noted above, the Court inquired of both Chapman and Silvey about the extent of their conflict. The Court found the conflict "was not raised or even suggested until shortly before" the motion to withdraw was filed, despite that Silvey had been representing Chapman for over a year. (Dkt. 117 at p. 24). The Court further concluded Chapman's own conduct spurred conflict into existence because "Chapman shared the contents [of the Government's trial brief] with other

people" and those other people "challenged" Silvey's preparation of the case. (*Id.* at p. 25; *see id.* at p. 15). Chapman informed the Court she spoke with family and "some other counsel" about her case, and those "outside forces" challenged Silvey's litigation tactics. (*Id.* at pp. 2-3, 5, 9). Repeatedly throughout the hearing, Chapman reiterated she disagreed with Silvey's litigation tactics—she felt her "story" should have been told "differently." (*Id.* at p. 18; *see id.* at pp. 16-17). Chapman also expressed regret about agreeing to certain stipulations with the Government. (*Id.* at pp. 6-7). Despite disagreeing with Silvey's tactics and regretting the stipulations, Chapman could not identify any specific motions she believed should have been filed by Silvey. (*Id.* at pp. 9-12).

Chapman has not raised a substantial question of fact or law regarding the extent of a conflict with Silvey. First, any conflict was self-imposed—Chapman spoke to family members and other "outside forces," who evidently disagreed with Silvey's litigation tactics. Chapman contends the conflict nonetheless represented a total loss of trust because, for example, she did not accept Silvey's "word on the rather mundane question of whether she could appear for the [motion to withdraw] hearing via Zoom." (Dkt. 119-1 at pp. 10-11; *see* Dkt. 117 at pp. 21-22). The Court's order setting the hearing, however, stated that the hearing would occur in Boise, Idaho, and that both Silvey and Chapman were "ordered to be present." (Dkt. 74). Silvey recognized Chapman's behavior of "double-checking [his] Zoom advice" was an example of her conduct undermining Silvey's longstanding strategy for trying the case. (Dkt. 117 at p. 22). The Zoom advice example fails to illustrate legitimate conflict existed and instead illustrates Chapman was unnecessarily difficult and stubbornly resistant about meaningfully and productively engaging with Silvey. That

unreasonable behavior cannot be relied on to manufacture legitimate conflict.[2] *See United States v. Smith*, 282 F.3d 758, 764 (9th Cir. 2002).

Second, to the extent conflict arose from Chapman's disagreement with Silvey's litigation tactics, litigation decisions are generally left to counsel to make and, "without more, may not provide a sufficient basis for establishing conflict." *Reyes-Bosque*, 596 F.3d at 1034; *see United States v. Salcedo*, 533 F. App'x 796, 798 (9th Cir. 2013); *United States v. Carter*, 560 F.3d 1107, 1113 (9th Cir. 2009); *Corona-Garcia*, 210 F.3d at 977. During the Court's inquiry, Chapman expressed her belief that her story could be told differently, but she failed to identify how Silvey should have told it differently. *See Corona-Garcia*, 210 F.3d at 977 (determining conflict was not so extensive as to justify substitution where defendant and attorney "refused to provide any meaningful detail" about conflict). Chapman also acknowledged that she engaged in regular communication with Silvey and that Silvey did ask her how she wanted the case to proceed. (Dkt. 117 at pp. 13-14). *See Reyes-Bosque*, 596 F.3d at 1034 (observing conflict was not so extensive as to prevent attorney and client from communicating and preparing for proceedings); *Corona-Garcia*, 210 F.3d at 977 (noting, "despite vague assertions to the contrary," defendant and attorney "were in fact communicating"). Silvey stated he was prepared to proceed to trial, had "worked on [Chapman's case] nonstop," and was willing to continue representing Chapman. (Dkt. 117 at p.

---

[2] Moreover, whether Chapman could appear at the hearing on the motion to withdraw via Zoom was not a "mundane question," as she characterizes it. Rather, because the motion to withdraw was not filed until one business day before the date of trial, the Court scheduled the hearing for the morning of trial. If Chapman—who was residing in Georgia on pretrial release— were to appear at that hearing via Zoom, conceivably she would not be present in Idaho to attend trial if the Court denied the motion to withdraw and proceeded to trial that day. In the event of a denial, another trial continuance would have been necessary to allow for Chapman's presence. In other words, Chapman's desire to appear via Zoom appeared to be a tactic to delay trial further, regardless of whether the Court granted or denied the motion to withdraw.

**MEMORANDUM DECISION AND ORDER RE DEFENDANT'S MOTION FOR RELEASE PENDING APPEAL - 7**

22). Chapman's disagreement with Silvey's litigation tactics, without more, does not fairly debatably establish a conflict necessitating new counsel. *Reyes-Bosque*, 596 F.3d at 1034; *Salcedo*, 533 F. App'x at 798; *Carter*, 560 F.3d at 1113; *Corona-Garcia*, 210 F.3d at 977. Chapman has not raised a substantial question of fact or law as to the second factor.

**C.     Timeliness of Motion to Withdraw**

Finally, Chapman contends the Court's conclusion the motion was untimely is fairly debatable. (Dkt. 119-1 at p. 12). Specifically, Chapman argues the motion was not untimely "simply because [Silvey] filed it just a few days before trial." (*Id.* at p. 12). Despite Chapman's attempt to represent otherwise, the motion was filed less than one business day before trial. (*See* Dkt. 71, Dkt. 116 at p. 5). In arguing the Court's timeliness finding is fairly debatable, Chapman also emphasizes the Court's consideration of judicial economy and the general inconvenience that would result from granting the motion. (Dkt. 119-1 at p. 12).

A district court's consideration of timeliness, however, involves balancing the inconvenience and delay resulting from counsel's withdrawal against the defendant's right to effective assistance of counsel. *E.g.*, *Velazquez*, 855 F.3d at 1037. The Ninth Circuit has recognized a motion to withdraw is untimely where the motion was filed within two weeks of a trial that had twice been continued and involved significant discovery. *United States v. Mendez-Sanchez*, 563 F.3d 935, 942 (9th Cir. 2009).

Here, as the Court detailed at the outset of the hearing on the motion, Chapman's trial had previously been continued four times; the motion was filed within one business day of trial; granting the motion would require Chapman to obtain new counsel resulting in another continuance; and the case involved extensive discovery, which new counsel would be required to review. (Dkt. 116 at pp. 3-6). When the Court ruled on the motion, the Court again emphasized its

consideration of the procedural history of Chapman's case—including that the case had been pending for over a year and that her trial date had been continued several times, the timing of the motion to withdraw in relation to the trial date, the efforts of the parties and the Court to be prepared to proceed to trial, and the resulting delay that would flow from granting the motion. (Dkt. 117 at pp. 23-24). The Court also observed the alleged breakdown in communication "was not raised or even suggested until shortly before" the motion was filed. (*Id.* at pp. 23-24). On balance, the Court determined that the motion was untimely and that Chapman's "eleventh-hour request [for Silvey] to withdraw [was] a delay tactic." (*Id.* at p. 26). Based on the controlling precedents, Chapman does not raise a substantial question of fact or law regarding the untimeliness of the motion. *E.g.*, *Mendez-Sanchez*, 563 F.3d at 942; *Reyes-Bosque*, 596 F.3d at 1035; *United States v. Big Lake*, 399 F. App'x 298, 299 (9th Cir. 2010); *see also Garcia*, 924 F.2d at 926 (noting a district court has "broad discretion" to deny a motion to withdraw "made on the eve of trial" if granting the motion would require a continuance).

## IV. CONCLUSION

Chapman fails to raise a substantial question of law or fact as to the Court's denial of the motion to withdraw because she has not presented a fairly debatable question regarding whether the denial was an abuse of discretion. Moreover, in failing to raise a substantial question of law or fact, Chapman fails to show her appeal is likely to result in a reversal.

## V.  ORDER

**IT IS ORDERED:**

1. Defendant's Motion for Release Pending Appeal (Dkt. 119) is **DENIED**.

DATED: March 28, 2024

Amanda K. Brailsford
U.S. District Court Judge