UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KHADIJAH X. CHAPMAN,<br><br>        Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>        Defendant. | Case No. 1:25-cv-00075-AKB<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is Plaintiff Khadijah X. Champman's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2255 (Dkt. 1) and Motion to Compel a Ruling (Dkt. 8). Having reviewed the record and the parties' submissions, the Court finds that the facts and legal argument are adequately presented, and that oral argument would not significantly aid its decision-making process, and it decides the motion on the parties' briefing. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B); *see also* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."). For the reasons set forth below, the Court will deny the petition and deny the motion as moot.

## I.     BACKGROUND[1]

On July 13, 2022, a grand jury indicted Chapman on one count of bank fraud in violation of 18 U.S.C. § 1344 (Dkt. 1 at 5–6). Because of a conflict with the Federal Defenders, CJA attorney

---

[1] For brevity, all docket citations in this Background section referring to the underlying criminal case, *United States v. Chapman*, No. 1:22-cr-00154-AKB (D. Idaho), are cited in simplified form (e.g., "Dkt. 1 at 2"); this convention applies only to events preceding Chapman's § 2255 petition.

**MEMORANDUM DECISION AND ORDER – 1**

Greg Silvey was appointed to represent Chapman (Dkt. 28). Following three motions to continue, trial was set for November 13, 2024 (Dkt. 46).

One business day before trial was scheduled to commence, Chapman moved to substitute counsel, asserting that her attorney was unprepared and that there had been a breakdown in communication (Dkt. 71 at 2). On November 13, 2023—the morning trial was set to begin—the Court held a sealed, ex parte hearing during which both Chapman and her counsel were questioned regarding the nature of their communications and counsel's preparedness for trial (Dkt. 75 at 1). From the bench, the Court denied the motion, finding that it was untimely; substitution would result in delay; and the conflict was not so severe as to prevent an adequate defense (Dkt. 117 at 23:20–27:12).

On November 16, the jury returned a verdict, finding Chapman guilty of Count One of bank fraud (Dkt. 85). She was sentenced on February 6, 2024 (Dkt. 108). Chapman filed two objections to the presentence report (PSR), arguing that the amount of loss calculation was incorrect and that the sophisticated means enhancement should not apply (Dkt. 99). At sentencing, the Court considered the PSR and Chapman's objections and sustained the loss amount objection (Dkt. 118 at 27:25–28:7), but it overruled the sophisticated means objection (*id.* at 29:22–30:19). Ultimately, Chapman was sentenced to forty-six months imprisonment followed by five years of supervised release (Dkt. 112) and permitted to self-surrender (Dkt. 108).

After sentencing, the Court granted Chapman two extensions of her self-surrender date (Dkt. 123; Dkt. 129). The Court denied a third request for an extension on July 19, 2024 (Dkt. 131). Six days later, Chapman filed a document styled as a "rescission affidavit," asserting that she was no longer subject to the Court's jurisdiction (Dkt. 132). Chapman did not report to the

MEMORANDUM DECISION AND ORDER – 2

Bureau of Prisons (BOP) as ordered (Dkt. 135 at 1). Instead, she failed to surrender and remained at large for several months before being taken into custody (Dkt. 138).

On February 7, 2025, Chapman filed a pro se motion to vacate under 28 U.S.C. § 2255, challenging her conviction and sentence on several grounds, including ineffective assistance of counsel and the denial of her motion to substitute counsel (Dkt. 1). The Government opposed (Dkt. 5; Dkt. 6). The petition is now ripe for a decision.

## II.    LEGAL STANDARD

### A.    Petition for Habeas Corpus

Title 28 U.S.C. § 2255 provides four grounds under which a federal court may grant relief to a federal prisoner who challenges the imposition or length of her incarceration: (1) "the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "the court was without jurisdiction to impose such sentence"; (3) "the sentence was in excess of the maximum authorized by law"; and (4) the sentence is otherwise "subject to collateral attack." § 2255(a).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that a federal district court judge may summarily dismiss a § 2255 motion "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief." "Under this standard, a district court may summarily dismiss a § 2255 motion only if the allegations in the motion, when viewed against the record, do not give rise to a claim for relief or are 'palpably incredible or patently frivolous.'" *United States v. Withers*, 638 F.3d 1055, 1062–63 (9th Cir. 2011) (citation modified).

If the petition is not dismissed, the Court shall order the government "to file an answer, motion, or other response within a fixed time, or to take other action the judge may order." Rule 4, Rules Governing § 2255 Proceedings. The Court need not hold an evidentiary hearing if the issues can be conclusively decided based on the evidence in the record. *See Frazer v. United States*, 18

F.3d 778, 781 (9th Cir. 1994), *overruled on other grounds by Ellis v. Harrison*, 891 F.3d 1160 (9th Cir. 2018).

**B.      Ineffective Assistance of Counsel**

The well-established two-prong test for evaluating ineffective assistance of counsel claims is deficient performance and resulting prejudice. *Strickland v. Washington*, 466 U.S. 668 (1984). To establish deficient performance, a petitioner must show that counsel's performance "fell below an objective standard of reasonableness." *Id.* at 688. Under the performance prong, there is a strong presumption that counsel's performance falls "within the wide range of reasonable professional assistance." *Id.* at 689. The prejudice prong is established if petitioner demonstrates that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 697; *see also Bell v. Cone*, 535 U.S. 685, 695 (2002).

Both prongs of the *Strickland* test must be met "before it can be said that a conviction (or sentence) 'resulted from a breakdown in the adversary process that render[ed] the result [of the proceeding] unreliable' and thus in violation of the Sixth Amendment." *United States v. Thomas*, 417 F.3d 1053, 1056 (9th Cir. 2005) (quoting *Strickland*, 466 U.S. at 687). The Court need not consider one component if there is an insufficient showing of the other. *Strickland*, 466 U.S. at 697.

### III.      ANALYSIS

Chapman first contends that the Court applied an incorrect amount of loss that she was accountable for, which she argues resulted in a miscalculation of the specific loss enhancement under the Sentencing Guidelines (Dkt. 1 at 3–4). Next, Chapman claims her Sixth Amendment right to effective counsel was violated because her attorney was unprepared, failed to file key pretrial motions, and agreed to false assertions in the Government's trial brief, and because the Court denied her attorney's motion to withdraw (*id.* at 4). Chapman also argues that the Court's

MEMORANDUM DECISION AND ORDER – 4

decision not to allow her attorney to withdraw prevented her from presenting exculpatory evidence (*id.* at 4–5). Finally, Chapman contends that the District Court lacked jurisdiction to hold her because her conviction is invalid and that she provided a valid rescission affidavit to the Court, requiring her immediate release from custody (*id.* at 5). The Court addresses these arguments in turn.

## A.      First Ground: Sentence Incorrect

Chapman claims that the Court, for purposes of sentencing, used a loss amount of $3,500,000, while the total in the PSR was $3,133,877, resulting in a two-point increase (Dkt. 1 at 3–4). Chapman argues that the Court should have used either the $833,276 amount that she was found guilty for at trial or the $338,958 loan in Count One of the indictment as the loss amount (*id.* at 4). According to Chapman, if the Court used the $833,276 loss amount, then her total offense level would have been 21 with a guideline range of 37 to 46 months (Dkt. 7 at 3).

The Government, however, correctly points out that Chapman was held accountable for a loss amount of $833,276 (Dkt. 5 at 9); *see also* Transcript of Sentencing Hearing Proceedings at 27:25–28:3, *United States v. Chapman*, No. 22-cr-00154-AKB (D. Idaho Mar. 4, 2024), Dkt. 118 (rejecting the Government's argument that Chapman be accountable for a loss of $3,133,877 and instead limited her loss to the four fraudulently obtained loans totaling $833,276). It appears that Chapman's arguments are based on the mistaken belief that she was held accountable for $3,133,877 because the sentencing minutes noted that the total offense level was 25 and her guideline range was 57 to 71 months (Dkt. 7 at 4 (citing Sentencing Minutes, *Chapman*, No. 22-cr-00154-AKB (D. Idaho Feb. 6, 2024), Dkt. 108). The sentencing minutes, however, are not controlling. Indeed, the statement of reasons confirms that the Court determined Chapman's total offense level was 21, with a criminal history of I, resulting in a guideline range of 37 to 46 months.

Statement of Reasons, *Chapman*, No. 22-cr-00154-AKB (D. Idaho Feb. 8, 2024), Dkt. 113. Therefore, Chapman's argument that her loss amount should have been $833,276 is moot.

Chapman also raises in her reply that the Court's application of the sophisticated means enhancement was "unwarranted and unfounded" because "Chapman was a minor participant and had less culpability, if any" (Dkt. 7 at 3). The Court, however, need not consider arguments raised for the first time in reply in a § 2255 proceeding. *United States v. Estrada*, No. CV-07-367-BLW, 2008 WL 5069083 at *2 (D. Idaho July 3, 2008); *see Eberle v. City of Anaheim*, 901 F.2d 814, 817 (9th Cir. 1990) (stating that generally appellants cannot raise issue for first time on reply). Even if the Court considered Chapman's claim, it still fails. At sentencing, the Court conducted an individualized assessment of Chapman's conduct to determine whether the enhancement should apply. *See* Transcript of Sentencing Hearing Proceedings, *Chapman*, No. 22-cr-00154-AKB (D. Idaho Mar. 4, 2024), Dkt. 118. It found that Chapman's actions of making up "employee numbers, payroll taxes, gross revenue documents, profit-and-loss statements for her company, and [falsification of] numerous tax forms" constituted sophisticated means. *Id.* at 29:12–24. Moreover, the Court rejected Chapman's contention that she had only engaged in "garden variety bank fraud," finding that her "actions demonstrated a much greater level of planning and creation of fraudulent documents." *Id.* at 29:22–30:5. Furthermore, other courts have upheld application of a sophisticated means enhancement in Paycheck Protection Program (PPP) cases where the fraudulent scheme involved a very similar one to Ms. Chapman's in this case. *United States v. Redfern*, No. 22-4196, 2023 WL 2823064 (4th Cir. Apr. 7, 2023); *United States v. Bruey*, No. 22-12532, 2023 WL 9016349 (11th Cir. Dec. 29, 2023). Therefore, the Court rejects Chapman's assertion that the sophisticated means enhancement was incorrectly applied at sentencing.

MEMORANDUM DECISION AND ORDER – 6

**B.      Second Ground: Ineffective Assistance of Counsel**

Chapman next argues she received ineffective assistance of counsel because her attorney was unprepared, did not file key pretrial motions, and agreed to false assertions that undermined her defense (Dkt. 1 at 4). She also contends that the Court abused its discretion when it denied her motion to withdraw as counsel (Dkt. 4 at 7). She maintains that competent representation would have likely resulted in a different outcome at trial (*id.*).

The first three claims are meritless on the face of the record. First, Chapman claims that her attorney was unprepared because he "did not file any important pretrial motions, besides continuances, such as a Request for Discovery, a Bill of Particulars, [] a Motion for Limine," or a trial brief (Dkt. 1 at 4). Chapman, however, does not identify specific evidence that her counsel failed to receive in discovery or evidence her counsel should have sought to be excluded via motions in limine. "The failure to raise a meritless legal argument does not constitute ineffective assistance of counsel." *Baumann v. United States*, 692 F.2d 565, 572 (9th Cir. 1982). Furthermore, a defendant cannot request a bill of particulars without showing that the indictment was "insufficient to permit the preparation of an adequate defense." *United States v. DiCesare*, 765 F.2d 890, 897 (9th Cir.), *amended* 777 F.2d 543 (9th Cir. 1985); Fed. R. Cr. P. 7. Additionally, defense counsel was not required to file a trial brief. As the Government notes, Chapman's attorney likely made a strategic decision not to do so because it "would have previewed his defense theories for the Court and the government" (Dkt. 5 at 13).

Chapman's claim that counsel did not thoroughly investigate her financial transactions, "which would have revealed exculpatory evidence demonstrating that [she] lacked the requisite intent to defraud the government" (Dkt. 3 at 3), is also unavailing. Chapman offers no evidence that her financial transactions indeed demonstrate that she lacked the requisite intent. Without such

MEMORANDUM DECISION AND ORDER – 7

evidence, the Court cannot conclude that counsel's performance was deficient or that Chapman suffered prejudice.

Finally, Chapman accuses counsel of agreeing to false and prejudicial facts in the Government's trial brief (Dkt. 1 at 4). While Chapman does not identify which stipulations she is referring to, the Court notes the following stipulations were contained in the Government's trial brief: (1) "A10 Capital was a "financial institution" as defined by 18 U.S.C. § 20"; (2) "Connecting the Dots and MBM Group and Network LLC (with EIN 82-3476123) did not report employee information to the Georgia Department of Labor in 2018, 2019, 2020, or 2021"; (3) "Connecting the Dots was administratively dissolved on or about September 7, 2018, and was reinstated on or about May 30, 2019," and "Defendant filed an annual registration for Connecting the Dots for registration periods of 2020, 2021, 2022, and 2023 in which Defendant is listed as the company's registered agent, Chief Executive Officer, Secretary, and Chief Financial Officer"; (4) "certain individuals were Defendant's relatives and did not work for Connecting the Dots in a professional capacity"; (5) and "Connecting the Dots, MBM Group, MBM Group & Network, David Chapman (Defendant's son), and Defendant did not file certain tax forms with the IRS in 2019, 2020, and 2021." Government's Trial Brief at 7, *Chapman*, No. 22-cr-00154-AKB (D. Idaho Nov. 6, 2023), Dkt. 69. The Court previously inquired into defense counsel's decision to stipulate to certain facts during a hearing on his motion to withdraw (*see* Dkt. 6). Counsel explained that there was "overwhelming evidence in [Chapman's] case" that was "going to come into evidence" and that "it[] [was] not going to look good [for] Chapman" (*id.* at 20:9–10, 21:4–5). Knowing that the evidence was admissible, counsel worked together with the Government and agreed "long ago of what was coming in and what wasn't coming in" (*id.* at 20:11–15). The Court finds now, as it did then, that counsel's decision to stipulate reflected a strategic choice intended to avoid "contentious

relations" and instead "reach a stipulation that is fair and adequate" (*id.* at 22:19–22). In other words, counsel's stipulation to admissible facts was a reasonable strategic decision, given the weight of the evidence against Chapman. *United States v. Cassini*, 207 F. App'x 787, 788 (9th Cir. 2006) (holding counsel's agreement to various stipulations "was well 'within the range of competence demanded of attorneys in criminal cases.'" (quoting *Strickland*, 466 U.S. at 687)). Accordingly, Chapman has failed to demonstrate that counsel's performance was deficient or that any alleged deficiency resulted in prejudice, and her ineffective assistance of counsel claim fails under *Strickland*.

### 1.    Denial of Motion to Withdraw

Chapman further argues that the Court's denial of her attorney's motion to withdraw violated her Sixth Amendment right to counsel (Dkt. 4 at 8). The denial of a motion to substitute counsel implicates a defendant's Sixth Amendment right to counsel and is therefore properly considered in a habeas proceeding. *Bland v. Cal. Dep't of Corrs.*, 20 F.3d 1469, 1475 (9th Cir. 1994), *overruled on other grounds by Schell v. Witek*, 218 F.3d 1017, 1023 (9th Cir. 2000). The Sixth Amendment guarantees effective assistance of counsel, not a "meaningful relationship" between an accused and her counsel. *See Morris v. Slappy*, 461 U.S. 1, 14 (1983). While a defendant has the right to make a motion for new counsel based on her perception of ineffective assistance of counsel, she does not have an automatic right to the substitution of counsel simply because she is dissatisfied with appointed counsel's performance. *Jackson v. Ylst*, 921 F.2d 882, 888 (9th Cir. 1990). The ultimate inquiry in a federal habeas proceeding is whether the petitioner's Sixth Amendment right to counsel was violated. *Schell*, 218 F.3d at 1024–25. That is, the habeas court considers whether the trial court's denial of or failure to rule on the motion "actually violated [petitioner's] constitutional rights in that the conflict between [petitioner] and [her] attorney had become so great that it resulted in a total lack of communication or other significant impediment

**MEMORANDUM DECISION AND ORDER – 9**

that resulted in turn in an attorney-client relationship that fell short of that required by the Sixth Amendment." *Id.* at 1026.

"An irreconcilable conflict . . . occurs only where there is a complete breakdown in communication between the attorney and client, and the breakdown prevents effective assistance of counsel." *Stenson v. Lambert*, 504 F.3d 873, 886 (9th Cir. 2007). In evaluating whether an irreconcilable conflict exists, the Court considers three factors: (1) the adequacy of the court's inquiry; (2) the extent of the conflict; and (3) the timeliness of defendant's motion. *United States v. Moore*, 159 F.3d 1154, 1158–59 (9th Cir. 1998); *United States v. Reyes-Bosque*, 596 F.3d 1017, 1033 (9th Cir. 2010). Disagreement over litigation tactics is an insufficient reason per se to substitute counsel. *Reyes-Bosque*, 596 F.3d at 1034.

### a.  Adequacy of Inquiry

Chapman argues that the Court's inquiry was inadequate because she was not questioned privately and was challenged on the types of motions that she thought should have been filed (Dkt. 4 at 8). "A conflict inquiry is adequate if it 'eases the defendant's dissatisfaction, distrust, and concern' and 'provides a sufficient basis for reaching an informed decision.'" *Daniels v. Woodford*, 428 F.3d 1181, 1200 (9th Cir. 2005) (quoting *United States v. Adelzo-Gonzalez*, 268 F.3d 772, 777 (9th Cir. 2001)).

Here, the Court conducted a sealed, ex parte hearing and questioned both Chapman and her counsel regarding the nature of the conflict and counsel's preparedness for trial. Motion to Withdraw Hearing Minutes at 1, *Chapman*, No. 22-cr-00154-AKB (D. Idaho Nov. 13, 2023), Dkt. 75; (Dkt. 6 at 2–11). In the course of that hearing, the Court vetted counsel's reasons for adopting his planned trial strategy and satisfied itself as to counsel's competence (Dkt. 6 at 20:8–24:19). It also examined the flow of communication between Chapman and counsel and determined that

MEMORANDUM DECISION AND ORDER – 10

communication between the two remained open (*id.* at 15:12–17). The record demonstrates that the Court considered the frequency of communication, counsel's readiness to proceed, the source of the breakdown in communication, and the timing of the motion. Chapman admitted that her conversations with counsel were not antagonistic or angry (*id.* at 14:11–17); they had in-depth conversations about her case and how she wished to proceed (*id.* at 15:12–17); and her frustration stemmed from the Government's trial brief that was filed the week prior—not from any breakdown in communication or lack of preparation on counsel's part (*id.* at 16:1–13). This level of inquiry was adequate to assess whether substitution of counsel was warranted.

### b.  Extent of the Conflict

Chapman contends that the extent of the conflict was irreparable because counsel had not prepared an adequate defense (Dkt. 4 at 7). Where a criminal defendant has, with legitimate reason, completely lost trust in her attorney, and the trial court refuses to remove the attorney, the defendant is constructively denied counsel. *Adelzo–Gonzalez*, 268 F.3d at 779. This is true even where the breakdown is a result of the defendant's refusal to speak to counsel, unless the defendant's refusal to cooperate demonstrates "unreasonable contumacy." *Brown v. Craven*, 424 F.2d 1166, 1169 (9th Cir. 1970); *Adelzo–Gonzalez*, 268 F.3d at 780. This prong is satisfied if the defendant shows that there was an "extensive, irreconcilable conflict" between herself and her appointed counsel. *United States v. Smith*, 282 F.3d 758, 763 (9th Cir. 2002).

The record here does not demonstrate a conflict so severe as to prevent an adequate defense or to constitute a complete breakdown of communication. Although some tension existed, it fell far short of an irreconcilable conflict. Chapman's counsel explained that there had been a breakdown in communications primarily because Chapman was frequently "double-checking" his advice with outside counsel without her attorney's knowledge (Dkt. 6 at 10:5–10, 23:6–8). The

**MEMORANDUM DECISION AND ORDER – 11**

level of distrust even extended to matters as simple as whether a motion was being held in person or via Zoom (Dkt. 6 at 23:6–11). Counsel testified, however, that he was prepared to proceed to trial, despite Chapman's distrust of him (Dkt. 6 at 10:11–17; 23:17–22). These circumstances reflect a disagreement fueled by outside advice from an attorney who had not reviewed the evidence or the full record—not from a total breakdown in communication.

The Ninth Circuit has made clear that "differences in trial strategy may not arise to the level of a serious conflict," particularly where "the petitioner and [her] attorney continue to communicate." *United States v. McCracken*, 591 F. App'x 530, 533 (9th Cir. 2014). Based upon the record, Chapman and her counsel remained in communication and were able to discuss the case in detail. Accordingly, the Court finds there was not a significant breakdown of communications and that any breakdown did not substantially interfere with the attorney-client relationship (Dkt. 6 at 26:22–27:2).

### c. Timeliness

As for timeliness, Chapman's motion was filed on the Friday before trial was set to commence. While a motion "made on the eve of trial alone is not dispositive," *Adelzo-Gonzalez*, 268 F.3d at 780, "[i]t is within the trial judge's discretion to deny [such a motion] if the substitution would require a continuance." *United States v. McClendon*, 782 F.2d 785, 789 (9th Cir. 1986). In considering such motion, "the court must make a balancing determination, carefully weighing the resulting inconvenience and delay against the defendant's important constitutional right to counsel of [her] choice." *Adelzo-Gonzalez*, 268 F.3d at 780.

The Court here did just that. At the hearing, the Court explained how continuing trial would result in a major disruption to the Court, the parties, and scheduled proceedings (Dkt. 6 at 25:5–26:14). For example, counsel for the Government had traveled from Washington D.C. to Idaho for

MEMORANDUM DECISION AND ORDER – 12

the trial and three witnesses travelled from Buffalo, Chicago, and Oklahoma (*id.* at 26:1–5). Additionally, sixty-five prospective jurors had been summoned to the courthouse that morning, with some traveling several hours from their residence (*id.* at 25:15–25). Given the proximity to trial and the fact that appointment of new counsel would have significantly delayed proceedings, this factors weighs against Chapman.

Considering all three factors, the Court denial of Chapman's motion to withdraw did not violate her Sixth Amendment right to counsel. The Court conducted an adequate inquiry; the conflict between Chapman and her counsel was not so severe as to prevent effective representation; and the motion was untimely. Accordingly, this claim does not support relief under § 2255.

## C.   Third Ground: Exculpatory Evidence

Chapman also argues that the Court's decision not to allow her counsel to withdraw prevented her from presenting exculpatory evidence (Dkt. 1 at 4–5). This argument appears to be a continuation of the ineffective assistance of counsel claim. More specifically, Chapman maintains her attorney's ineffective assistance of counsel prevented her from "call[ing] the many Witnesses she had that would have countered the Government's main [c]ase" to demonstrate that the elements of bank fraud were not met (Dkt. 4 at 9). She claims that she had witnesses and evidence showing that two of her businesses—Connecting the Dots 101 and MBM Group and Network—were viable businesses, had employees working on a daily basis, and "operations that were up and running for many years" (Dkt. 7 at 5). She also asserts that the Small Business Administration had several phone recordings from when Chapman called them to correct information about her businesses (*id.*). According to Chapman, this evidence demonstrates that she had legitimate businesses and that she was eligible to qualify for funding (*id.*).

A defendant is guilty of bank fraud under 18 U.S.C. § 1344(2) if the government proves beyond a reasonable doubt that (1) the defendant knowingly carried out a scheme or plan to obtain

**MEMORANDUM DECISION AND ORDER – 13**

money or property from a financial institution by making false statements or promises; (2) the defendant knew that the statements or promises were false; (3) the statements or promises were material, i.e., they had a natural tendency to influence, or were capable of influencing, a financial institution to part with money or property; (4) the defendant acted with the intent to defraud; and (5) the financial institution was federally chartered or insured. While Chapman does not elaborate on what element is defeated by her claim that she had legitimate businesses and was eligible for funding, the Court presumes that it goes toward the allegation that she submitted fraudulent PPP loan applications. *See* Indictment at 6, *Chapman*, 22-cr-00154-AKB (D. Idaho July 13, 2022), Dkt. 1 (alleging that Chapman knowingly executed a scheme to defraud a financial lender "by submitting the fraudulent PPP Loan Application for Connecting the Dots 101 Group & Network, Corp.").

The Government argues that Chapman's claims and factual assertions are conclusory and "have already been disproven as false" (Dkt. 5 at 14). The Court agrees. At trial, the Court received testimony that the numbers put on the loan applications were not based on legitimate business operations. Transcript of November 14, 2023, Jury Trial at 136:19–20, *Chapman*, 22-cr-00154-AKB (D. Idaho Jan. 4, 2024), Dkt. 95. Testimony presented at trial also indicated that Chapman actively took steps to make her company appear legitimate, such as filing tax returns. *Id.* at 164:25–165:2. Furthermore, Chapman stipulated that such tax forms were never submitted to the IRS. *See* Stipulation #5, *Chapman*, 22-cr-00154-AKB (D. Idaho Nov. 2, 2023), Dkt. 60; Transcript of November 15, 2023, Jury Trial at 90:3–8, *Chapman*, 22-cr-00154-AKB (D. Idaho Jan. 4, 2024), Dkt. 96. Therefore, Chapman's claim of ineffective assistance of counsel due to the failure to present witnesses and evidence to show that her businesses were legitimate is nothing more than a conclusory statement without merit.

**MEMORANDUM DECISION AND ORDER – 14**

**D.     Fourth Ground: Lack of Jurisdiction**

Finally, Chapman contends that the Court does not have the authority to hold her in custody because she filed a "rescission affidavit" (Dkt. 1 at 5). The affidavit—filed one day before Chapman's self-surrender date—purports to rescind "any and all judicial contracts" and declares that Chapman is "immediately release[d]" of "all claims/liens against [her] estate." Notice of Rescission Affidavit at 1, 6, *Chapman*, 22-cr-00154-AKB (D. Idaho July 25, 2024), Dkt. 132; (Dkt. 1 at 2) (arguing that the affidavit declared that Chapman was "not under [the Court's] jurisdiction" and thus "was free and within her rights to proceed to go about her daily life"). According to Chapman, she did not report to the BOP on her self-surrender date because she believed the rescission affidavit removed the Court's jurisdiction over her (Dkt. 7 at 6). Thus, Chapman claims the Court did not have the authority to arrest her after she failed to self-surrender on July 26, 2024 (Dkt. 1 at 5). This contention is without merit.

Following Chapman's sentencing, the Court granted two motions to extend Chapman's self-surrender date. Order Extending Self-Surrender Date, *Chapman*, 22-cr-00154-AKB (D. Idaho Mar. 5, 2024), Dkt. 123; Second Order Extending Self-Surrender Date, *Chapman*, 22-cr-00154-AKB (D. Idaho May 9, 2024), Dkt. 129. The Court, however, denied her third request to extend it on July 19, 2024. Order Denying Third Motion to Extend Self-Surrender Date, *Chapman*, 22-cr-00154-AKB (D. Idaho July 19, 2024), Dkt. 131. Six days later, Chapman filed her rescission affidavit. Notice of Rescission Affidavit, *Chapman*, 22-cr-00154-AKB (D. Idaho July 25, 2024), Dkt. 132. Based on this record, it is clear that Chapman was desperate to not face the consequences of her actions. *See United States v. Barnette*, 129 F.3d 1179, 1184 (11th Cir. 1997) (holding "intent to flee from prosecution or arrest may be inferred from a person's failure to surrender to authorities"). Criminal defendants cannot avoid liability by merely declaring that they are no longer subject to the Court's jurisdiction. As the Government notes, Chapman's claim that the

**MEMORANDUM DECISION AND ORDER – 15**

Court lacks jurisdiction over her is "patently frivolous and false" (Dkt. 5 at 14). Therefore, the Court had jurisdiction to hold her in custody after she absconded.

## IV.    ORDER

**IT IS ORDERED that:**

1.    Petitioner Khadijah X. Chapman's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2255 (Dkt. 1) is **DENIED**. Accordingly, this case is **DISMISSED with prejudice**.

2.    Petitioner Khadijah X. Chapman's Motion to Compel a Ruling (Dkt. 8) is **DENIED as MOOT**.

3.    The Court does not find its resolution of this habeas matter to be reasonably debatable, and a certificate of appealability will not issue. See 28 U.S.C. § 2253(c); Rule 11 of the Rules Governing Section 2255 Proceedings. If Petitioner wishes to appeal, she must file a timely notice of appeal with the Clerk of Court. Petitioner may seek a certificate of appealability from the Ninth Circuit by filing a request in that court.

DATED: April 24, 2026

Amanda K. Brailsford
U.S. District Court Judge